IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | | |
|---|---|---|
| ROMTEC et al            , | ) | CASE NO. 08-06297-HO |
| | ) | |
| Plaintiffs, | ) | ORDER |
| | ) | |
| vs. | ) | |
| | ) | |
| OLDCASTLE PRECAST, INC., a | ) | |
| Washington corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Introduction

Plaintiffs Romtec Utilities Inc., *et al* (Romtec) filed suit against Oldcastle Precast Inc (OPI), alleging that OPI breached an agreement to purchase all outstanding shares of Romtec and seeks declaratory relief, specific performance and damages. [#1, Ex A.; #65]. Defendant OPI moved for summary judgment [#31], which this court denied on January 12, 2010. [#48].

The parties unsuccessfully attempted to settle this matter through mediation. Shortly after the failed mediation, Romtec moved to amend their complaint or alternatively to dismiss their

complaint without prejudice. [#53]. OPI opposed Romtec's motion which the court granted [#63], and Romtec filed their amended complaint on August 4, 2010. [#65]. This matter is currently set for trial on March 30, 2011. [#64].

OPI's motion to dismiss Romtec's fourth claim for relief in the amended complaint is currently before the court. [#68].

## Background

Plaintiff Romtec designs, fabricates and assembles complete prefabricated pump stations for sewage and storm water applications which are marketed nationally. [#36]. Romtec offers "turnkey systems" - the systems are not only designed and produced by Romtec but are delivered complete, installed under on-site Romtec management with the final electrical hook-ups provided by Romtec and the system then started and tested by Romtec. *Id.*.

Defendant OPI manufactures concrete pipes, sewer and storm drain manholes, storm structures, pre-stressed structural building systems and telecommunications enclosures. [#39, Ex B, 9:8-10:11]. OPI has several regional plants that manufacture prefabricated pump stations. *Id.* OPI's submersible pumps are marketed regionally, not nationally. [#39, Ex B, 11:11-15].

Romtec's fourth claim for relief in the Amended Complaint is for breach of contract and seeks damages of $5.9 million, plus interest from July 2, 2008 until paid. [#65-p.5-6].

2 - ORDER

OPI moves to dismiss this claim pursuant to Fed.R.Civ.P. 12(b)(6), arguing that "expectancy damages are not available as a matter of law for breach of a letter of intent." [#68; #69-p.3]. OPI asserts that in Oregon the only damages available in a claim for breach of a letter of intent are reliance damages, such as those alleged in plaintiffs' fifth claim for relief. *Id.*

Plaintiffs respond that consequential damages are available here because the parties had agreed that they would use a good faith effort to consummate the transaction and when OPI refused to sign the contract documents that OPI had drafted, it breached that duty. [#71].

## Discussion

**A.    Standard of Review:**

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) is proper only where there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable theory. *Balisteri v. Pacific Police Dept.,* 901 F.2d 696,699 (9th Cir.1990). The issue is not whether plaintiffs are likely to succeed on the merits, but if the complaint is sufficient to entitle the plaintiffs to proceed beyond the pleadings in an attempt to establish their claim. *De La Cruz v. Torrey,* 582 F.2d 45, 48 (9th Cir 1978). The plaintiffs' material allegations must be accepted as true and the complaint construed in the light most favorable to them. *Love v. United States,* 915 F.2d 1242, 1245

3 - ORDER

(9th Cir. 1988).

Nonetheless, a court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Sitanggang v. Indymac Bank FSB,* 2009 WL 1286484, p.2 (citing *Farm Credit Service v. Am. State Bank*, 339 F.3d 765, 767 (8th Cir. 2003)). Similarly, conclusory allegations, without more, are insufficient to defeat a motion to dismiss for failure to state a claim. *McGlinchy v. Shell Chemical Co.,* 845 F.2d 802 810 (9th Cir 1988); see also *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009)(To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face.)(citations omitted).

**B.   Factual Background:**

On January 25, 2008, Romtec received a "Valuation and Outline Proposal" on OPI letterhead from an OPI Vice-president which provided that any potential acquisition by OPI "would be contingent upon . . . [f]ormal agreements," including a "Stock Purchase Agreement" as well as "[a]pproval of the Oldcastle Precast group President and our Board of Directors." Romtec agreed to the terms and conditions set out in the proposal including the provision that OPI's president would have to approve the transaction.

On March 24, 2008, OPI transmitted to Romtec a "Letter of

4 - ORDER

Intent" and an "Offer Letter" outlining the parameters for the negotiation of a potential purchase of Romtec's shares by OPI. Both letters were drafted by an OPI Vice-president on behalf of OPI.

After reviewing the letter and the Letter of Intent with its legal counsel, Romtec executed the Letter of Intent on March 25, 2008. The first and second paragraphs of the Letter of Intent provided [#39-Ex F]:

> This letter confirms that Oldcastle Precast Inc (Oldcastle) and Tim Bogan (Seller) have agreed to negotiate with respect to the terms for a sale of the stock of [Romtec] on the basis of the attached offer letter dated March 24, 2008.
>
> Further, this letter of intent is non-binding and no party will have any legally enforceable obligation to proceed with such sale of the stock of [Romtec] until definitive agreements are executed and delivered. Both parties will use good faith effort to consummate the transaction based on this Letter of Intent. If an agreement is not signed, there will be no break-up fee due either party.

Shortly after March 25, 2008, Romtec and OPI began negotiating the terms of the proposed purchase of Romtec shares by OPI. Between April 18, 2008 and June 9, 2008, the parties and their attorneys negotiated, drafted and exchanged documents related to the proposed purchase of Romtec's shares by OPI including the "Stock Purchase Agreement," a 47 page long document.

OPI had three directors: Mark Schack (President of OPI), Tom

Hill and Michael O'Driscoll. On May 19, 2008, OPI president Mark Schack submitted to OPI's parent entity, Oldcastle Inc., a detailed proposal and acquisition rationale for a potential acquisition of Romtec's shares. OPI also contacted Mr. Bogan of Romtec that same day[1]. Oldcastle, Inc., forwarded OPI's proposal to CRH on May 29, 2008. In response to questions and comments received from CRH, OPI prepared revisions to the original internal proposal June 4-5, 2008.

Shortly thereafter, a CRH financial analyst questioned the proposed acquisition of Romtec and Romtec's questions about the viability of the purchase indicated there was a possible problem. However, on June 9, 2008, OPI counsel James Stevens e-mailed Mr. Whitty (Romtec's counsel) and Mr. Bogan, another "revision of the stock purchase agreement" saying:

> "Please note that the stock purchase agreement remains subject to Oldcastle's review and internal approval processes. However, I have deleted the document number in the footer of the signature pages so you can have it signed tomorrow to hold pending the signing and closing if that is convenient for you."

Two days later, on June 11, 2008, Mr. Whitty (Romtec's legal counsel), sent a letter, the Stock Agreement together with the signature pages (signed) and the Romtec stock certificates (also signed) to Mr. Stevens by Federal Express. These documents were (and are) maintained by Mr. Stevens, OPI's outside legal counsel.

---

[1] The content of that discussion is disputed.

Representatives of OPI have not executed any version of the Stock Purchase Agreement nor any other related agreements submitted with Mr. Whitty's June 11th letter.

On June 13, 2008, Mr. Stevens wrote to Romtec that he had "reviewed the signed documents that [Mr. Whitty] sent to us to hold in escrow pending signing and closing."  Mr. Heusel sent an email on June 19, 2008 to Mr. Bogan saying:

> "once we have approval we can move very quickly . . . since all contracts etc have been finalized.".

On July 1, 2008 the CEO of CRH informed OPI that CRH was not approving the proposed $12 million purchase of Romtec's shares. On July 2, 2008, Mr. Heusel informed Mr. Bogan that CRH  "was not going to approve the deal."

## C. Defendants' motion to dismiss plaintiffs' fourth claim:

Defendants move to dismiss the fourth claim in plaintiffs' amended complaint arguing that expectancy or consequential damages are, as a matter of law, unavailable for the breach of a letter of intent.  [#69; #72].  OPI cites three cases to support their contention, arguing that "[u]nder Oregon law, the remedy for breach of a letter of intent is reliance costs; expectancy damages are not available."  [#69-pp.5-7,citing *Logan v. D.W. Sivers Co.,* 343 Or 339 (2007)]  OPI does not (for the purposes of this motion), contest plaintiffs' assertion that "the Letter of Intent obligated OPI to use good faith effort to consummate the transaction" rather OPI "merely challenges the measure of damages

7 - ORDER

requested in Claim Four."  [#72-p.6].

Plaintiffs disagree with OPI's analysis of the cases and counter that because the promise to "use good faith effort to consummate the transaction based on this Letter of Intent", bound both parties, all plaintiffs' consequential damages that flow from OPI's breach of that promise, are recoverable.  [#71-pp.3-6].  I generally agree.

While the term 'Letter of Intent' is not a legal term of art, it is frequently used in real estate development documents, securities underwriting, and sale of corporate assets. Generally, the term 'letter of intent' refers to a writing documenting the preliminary understandings of parties who intend to enter into a contract or merger of companies.  *Black's Law Dictionary* at 904 (6th Ed 1990).

And, contrary to OPI's assertions, when a letter of intent imposes a binding obligation to negotiate in good faith and a defendant breaches that duty, a plaintiff *may* recover expectation damages when those damages are reasonably certain and there is no provision in the letter limiting the parties liability for those damages.  (See e.g.,  *Logan v. D.W. Sivers Co.,* 339 Or. 359 (2007)(quoting *Venture Associates v. Zenith Dadt Systems,* 96 F.3d 275 (7th Cir. 1996)(consequential or expectation damages may be available for breach of letter of intent)).

Thus, if a plaintiff can prove that had it not been for the

8 - ORDER

defendant's bad faith the parties would have made a final contract, then the loss of the benefit of the contract is a consequence of the defendant's bad faith and provided it is foreseeable, and the defendant may be liable for plaintiff's consequential damages.

In this matter, OPI's representative drafted a Letter of Intent which was sent together with his March 24th, offer to buy 100% of Romtec's shares subject to several contingencies, none of which limited the parties' consequential damages resulting if OPI breaching their admitted obligation to use good faith effort to consummate the transaction.  [#39- Ex F].

While plaintiff's claim may be barred by issues that will develop through discovery, I find that consequential damages resulting from a breach of good faith contained in the letter of intent are not barred as a matter of law.

## Conclusion

Based on the foregoing, defendants' Motion to Dismiss plaintiff's Fourth Claim in the Amended Complaint [#68] is DENIED.

IT IS SO ORDERED.

DATED this 2nd day of December, 2010.

s/ Michael R. Hogan
United States District Judge

9 - ORDER